**Arden MILLER, Appellant,**

v.

**WARREN COUNTY, Iowa; Warren County Board of Supervisors; Robert Dittmer; John Pray and George Hladkey, as Members of the Warren County, Iowa, Board of Supervisors, Appellees.**

No. 63157.

Supreme Court of Iowa.

Nov. 14, 1979.

Keith E. Uhl of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

John W. Criswell, Warren County Atty., Indianola, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and LARSON, JJ.

LARSON, Justice.

This plaintiff sought damages in the district court for the closing of a road adjacent to his property. The trial court sustained the county's special appearance on the basis that the plaintiff had failed to timely appeal from an order of the board of supervisors denying compensation. We reverse and remand with instructions to the district court to enter an order vacating the order of the board.

The defendant county, through its board of supervisors, proposed to close a secondary road adjoining land of Arden Miller, the plaintiff. Its authority to do so under section 306.10, The Code 1975, is not questioned. However, the sufficiency of the notice of the board's hearing is challenged by the plaintiff. He contends that the order of the board, insofar as it pertained to damages, was a nullity because he had not received notice that he had a right to claim damages or that this right would be lost if not raised prior to the hearing. He therefore urges that it was error for the district court to sustain the special appearance on the basis that he had failed to timely appeal from that order.

Section 306.12 provided for notice of a proposed road closing to be published at least twenty days prior to the hearing. It also required notice by certified mail on adjoining landowners and certain other parties. The form of notice was prescribed by section 306.13 as follows:

> Said notice shall state the time and place of such hearing, the location of the particular road, or part thereof, or crossing, the vacation and closing of which is to be considered, and such other data as may be deemed pertinent.

The prescribed form did not require notice of the right to file objections or claims for damages.

Section 306.14 provided for objections and claims for damages:

> At such hearing, the department, the board of supervisors, or the agency in control of affected state lands, as the case may be, and any interested person, may appear and object and be heard. Any person owning land abutting on a road which it is proposed to vacate and close, shall have the right to file, in writing, a claim for damages at any time on or before the date fixed for hearing.

The notice received by Miller was worded as follows:

## ROAD NOTICE

### TO WHOM IT MAY CONCERN:

Pursuant to the provisions of chapter 306.10 of the 1975 Code of Iowa, and upon Motion and Resolution of the Board of Supervisors of Warren County, Iowa, and the Landowners adjoining the following described road in Warren County, Iowa:

[Descriptions of several parcels of land, including that involved here, are set out.]

Are hereby notified that a hearing will be held the 16th day of December, 1975 at 10:00 a. m. in the Board of Supervisors' office in the Warren County Courthouse in Indianola, Iowa on the advisability of closing and vacating said road. You are hereby further notified that unless *objections* are filed on or before the above named date that said road will be hereby closed and vacated. (Emphasis added.)

No claim for damages was filed; however, Miller and others filed an objection to the proposed closing as follows:

To Whom It May Concern:

We the undersigned *object* to the closing of the road as described.

[Legal description set out.]

1. The closing of this road would devaluate all adjoining property.
2. The County built a 66 ft. road, we can't understand why they would close it within one year using the taxpayers' money. (Emphasis in original.)

The objection bore sixteen signatures, including plaintiff's.

The board of supervisors met as scheduled, and the plaintiff and others appeared, objecting to the proposed closing. The board's resolution recited these facts concerning the hearing, as it pertained to Miller's land:

Arden Miller objected to the road closure because of convenience of access to the northeast five (5.0) acres of his property, and Joan Miller stated Arden Miller must pass through their new orchard for access to his property and this road would be the only access if the road is closed and he will not be able to use the orchard access in 4 to 5 years, and following considerable discussion a motion was made by Robert Dittmer, seconded by John F. Pray, to close the above described road. A roll call vote was requested.

The resolution is silent as to any discussion at the hearing concerning damages for Miller or any of the other parties objecting to the closing.

Under section 306.16, the board's order was final as to a party merely objecting to a closing. A claimant, however, could appeal the board's order as to damages under section 306.17 which provided:

Notwithstanding the terms of the Iowa administrative procedure Act, any claimant for damages may, by serving, within twenty days after the said final order has been issued, a written notice upon the agency which instituted and conducted such proceedings, appeal as to the amount of damages, to the district court of the county in which the land is located, in the manner and form prescribed in chapter 472 with reference to appeals from condemnation, and such proceedings shall thereafter likewise conform to the applicable provisions of said chapter.

Plaintiff did not file an appeal within the twenty-day period following the order of December 16, 1975. The defendant contends, and the district court ruled, that this was fatal to this action in district court. The plaintiff contends that because he was not adequately informed by the notice as to the nature of the hearing, i. e., that it was for the purpose of determining the amount of damages allowable as well as the advisability of closing the road, he was excused from complying with the time limitation.

Both parties, and the district court, focused upon *Christensen v. Board of Supervisors,* 251 Iowa 1259, 105 N.W.2d 102 (1960). In that case the plaintiffs filed a timely claim for damages and appeared at the hearing to object to the closing and to pursue their claim for damages. The board did not vote on the closure at the end of the

hearing. Rather, they voted on it later and filed the closure order (denying damages) without notifying the claimants. The claimants did not discover this action until after the time for appeal had run. Under those circumstances this court held that application of the appeal time limitation could not provide grounds for a special appearance based upon lack of jurisdiction of the subject matter. That case did not involve an alleged defect in the notice of the board's hearing, and it is therefore not particularly helpful in resolving the issue of the board's jurisdiction in this case.

In the present case, the notice of the proposed hearing did not mention the necessity of filing a claim for damages prior to the hearing, nor even that allowance for damages would be an issue. The record shows no discussion of damages at the hearing, and the final order of the board makes no reference to any such claim by plaintiff or its denial by the board. The issue in this case, therefore, is not whether there are sufficient grounds for "excusing" a failure to appeal during the twenty-day period, as in *Christensen,* but whether the board's order of December 16, 1975, was a valid order which would commence the running of the appeal period.

A similar notice issue was presented in *Witham v. Union County,* 198 Iowa 359, 196 N.W. 605 (1924). The statute prescribing the form of notice for condemnation for highway purposes required that it advise the landowner, among other matters, that objections and claims for damages must be filed within ten days from service of the notice or be waived. Witham's notice included no mention of the need to file claims and objections. The court said that "[i]t may be conceded that the service of such notice, in and of itself, would not confer jurisdiction on the board of supervisors to acquire land for road purposes by condemnation." 198 Iowa at 369, 196 N.W. at 609. Witham, however, had attended the hearing, objected to the project, and argued the amount of damages offered him by the board. Damages were tendered by the board in its final order and were refused by the owner. The court held that under those

circumstances he had waived his jurisdictional objection.

■ In the present case the notice failed to advise the plaintiff of his right to claim damages and that the right to claim damages would be lost if not presented prior to hearing. The record is devoid of any evidence that there was even a hearing on the issue of damages. Under these circumstances we cannot conclude that the plaintiff either waived the jurisdictional defects or proceeded to a hearing on the issue of damages by consent.

■ A fundamental notion of due process is notice of the pendency of the proceeding and an opportunity to prepare a response to it. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1954). The issue in this case is whether mere notice of the proposed hearing is sufficient without informing the recipient that damages, as well as objections, would be considered and that claims for damages must be filed prior to the hearing. In other words, is notice of the *pendency* of the action sufficient without providing information to the recipient as to the scope of the hearing or the rights available in response to the proposed action? Two Supreme Court cases are helpful in resolving the issue.

*Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), involved the diversion of a stream pursuant to a New York City ordinance. The ordinance provided for damages to affected landowners, with a three-year period for filing claims. Notice of the governmental action was provided by publication and posting. The court noted that

[n]either the newspaper publications nor the posted notices explained what action a property owner might take to recover for damages caused by the city's acquisition, nor did they intimate any time limit upon the filing of a claim by an affected property owner.

*Schroeder* at 210, 83 S.Ct. at 281, 9 L.Ed.2d at 258. The case was decided on the ground that the *manner* of notice was not reason-

ably calculated to insure notice would be actually received. However, the Court's discussion of the deficiency in the content reflects its concern about it.

In *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court based its due process decision on the insufficiency of the contents of the notice. The property interest involved was uninterrupted electrical service. The Crafts had experienced problems with double-billing and the inadequacy of the utility's personnel to eliminate the problem. Their electrical service had been terminated five times. Before each termination, they received notice that the service would be terminated unless the bill was paid. The company apparently had an administrative procedure for disputing claims, but in all her appearances at the utility, Mrs. Craft was never properly referred to it. Speaking of the notice, the Court said:

> Petitioners' notification procedure, while adequate to apprise the Crafts of the threat of termination of service, was not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" to their bills. The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing." Notice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified. As no such notice was given respondents . . . [,] they were deprived of the notice which was their due.

*Memphis Light* at 14–15, 98 S.Ct. at 1563, 56 L.Ed.2d at 42–43 (citations and footnotes omitted).

Our statutes from 1873 to 1951 required the road closing notice to advise adjoining owners of their rights to object and file claims, and that failing to do so would result in forfeiture of those rights. For example, section 306.17, The Code 1950, in addition to notice of the pendency of the matter and details of the hearing, required the recipient be advised that "all objections thereto, or claims for damages, must be filed in the auditor's office on or before . . . or such road will be established vacated, or altered without reference thereto."

In a substantial code revision in 1951 combining provisions applicable to primary and secondary roads, 54th G.A., ch. 103, the detailed notice contents previously required were deleted. The present abbreviated notice provision, section 306.13, which does not require notice as to filing claims for damages, had been previously found at section 313.49, The Code 1950, and had been applicable only to primary roads.

We conclude that the legislature had consistently considered advance notice of the right to object and file damage claims to be a necessary part of a road closing notice and that its deletion in the 1951 revision was more likely a result of oversight than an abandonment of that view. That these requirements might have been unintentionally "lost in the shuffle" in 1951 is borne out by the fact that after the revision there remained no provision for mailed notice of secondary road closings to adjoining landowners. This was restored in 1963, 60th G.A., ch. 182, § 1, and is again found as part of the notice provision in the present section 306.12. The more detailed notice form on road closings has never been restored, although as we have pointed out we do not believe this is intentional.

In any event, we conclude the notice here was insufficient to vest jurisdiction in the board on the matter of damages. It is true the plaintiff could have learned of his rights by consulting the Code. However, nothing in the notice would alert him to the need for doing so. Such notices, designed for service upon laypersons, should not rest for their validity upon independent research by adjoining owners. This is implicit in *Memphis Light;* the customers there were not expected to glean from rules of the public utility information concerning the full extent of their rights.

We do not conclude that the notice provision itself is constitutionally deficient. It does not require notice of the rights of claimants, but requires that the notice should contain additional information "deemed pertinent." Obviously, notice of claims procedures would not be pertinent in all cases. Here it was pertinent and should have been included.

The present status of this case raises a question as to what should occur upon remand. If there had been a valid final action by the board of supervisors, the district court would treat this as an original action for damages. *Christensen,* 251 Iowa at 1266, 105 N.W.2d at 107. In the present case, however, we have concluded the board had no jurisdiction to act with respect to damage issues. To order the district court in such circumstances to ascertain damages as an original action would be equivalent to bypassing the board and allowing the court to supplant it by making the initial determination.

The order of the district court sustaining the special appearance must be reversed, and the order of the board of supervisors must be vacated. An order of the district court should be entered, remanding the matter to the board of supervisors, which shall proceed in conformity with the applicable statutes and this opinion.

REVERSED AND REMANDED.